### Richmond

## JACK D. MANESS, TRUSTEE, ETC.

### v.

## TIDEWATER SAND COMPANY, INCORPORATED, ET AL.

April 18, 1980.

Record No. 780314.

Present: All the Justices.

*Jack D. Maness* for appellants.

*Stanley G. Barr, Jr. (Canoles, Mastracco, Martone, Barr & Russell,* on brief), for appellee.

Case submitted on brief for Daniel L. Thrasher, appellee.

No brief or argument for Tidewater Sand Company, Incorporated, Haynes J. Powell, Irene H. Thrasher, Catherine Ann Thrasher and Sallie Thrasher, appellees.

COMPTON, J., delivered the opinion of the Court.

The main issue in this appeal of a suit in chancery to recover the amount of a money judgment is whether the proceeding is a judgment-

lien creditor's suit or a general creditors' suit against a decedent's estate. Determination of this issue is important to the infant appellant because she has an interest in a tract of real estate subject to the lien of the judgment and seeks to force the judgment creditor to collect the debt from the personal estate of the decedent rather than through a sale of the land.

Tidewater Sand Company, Incorporated, brought this suit in 1974 to collect a judgment approximating $59,000 obtained in the court below in 1973 against Emma P. Thrasher and another, jointly and severally. In this suit, numerous heirs, lineal and collateral, of Emma P. Thrasher, who was deceased when the suit was instituted, were named as parties defendant. The issues were referred to a commissioner in chancery who took evidence and rendered a report which was confirmed by the chancellor. Subsequently, the trial court overruled exceptions to the report and in December of 1977 entered the final decree, from which we awarded this appeal.

The controversy implicates three tracts of land in the City of Chesapeake and the descendents of Daniel L. Thrasher, Sr. The following chart may be of assistance as we relate the facts:

In 1960, Daniel L. Thrasher, Sr. died intestate survived by his widow, Emma Powell Thrasher, and three children, Emma Jean Thrasher, Robert Earl Thrasher and defendant Daniel L. Thrasher, Jr. Thrasher, Sr. died seized and possessed of a 74.6-acre tract of land, which we shall designate Parcel One.

In 1968, Tidewater Sand Company acquired a 75-foot wide easement over Parcel One for the duration of certain excavation by Tidewater of a 58-acre borrow pit. The easement will terminate July 1, 1988.

In 1970, Robert Earl Thrasher died testate survived by his widow,

Irene, and two daughters, defendant Emma Jean Thrasher, II (so designated by us for clarity), an infant born in 1965, and defendant Catherine Ann Thrasher. By his will duly admitted to probate, Thrasher devised his undivided one-third interest in Parcel One, one-half to defendant-appellant Jack D. Maness, Trustee for Emma Jean Thrasher, II, and one-half to defendant Sallie Thrasher as Trustee for Catherine.

In 1972, Emma Jean Thrasher died testate and by her will duly probated devised her undivided one-third interest in Parcel One to her mother, Emma Powell Thrasher.

On October 1, 1973, the judgment in issue for $58,437.75 plus interest and costs was obtained by plaintiff Tidewater Sand Company, Incorporated, against Emma P. Thrasher and another, and was duly docketed on the next day. At the time, the judgment debtor Thrasher owned an undivided one-third interest in Parcel One. She also owned in fee simple Parcel Two, a tract containing about 15 acres referred to as the "Home Site," and Parcel Three in fee simple, a tract of approximately 400 acres known as "Elbow Farm." Thus Parcels One, Two and Three are subject, in whole or in part, to the lien of the judgment. The undivided one-sixth fee simple interest in the whole of Parcel One of Maness, Trustee, and the infant Emma Jean, II, of course, is not subject to the lien of the judgment.

In December of 1973, Emma P. Thrasher, widow, conveyed Parcel Two, the Home Site, to her brother, defendant Haynes J. Powell.

In March of 1974, Emma P. Thrasher died testate and by her duly probated will left her entire estate, including a devise of her undivided one-third interest in Parcel One, to her son, defendant Daniel L. Thrasher, Jr. He qualified as Executor of the estate.

The initial bill of complaint filed in December of 1974 by Tidewater named only Powell, the brother, and Thrasher, as Executor, parties defendant. The bill designated only the Home Site, Parcel Two, and sought its sale to satisfy the judgment. Following reference to the commissioner in chancery, before which some proceedings were had, an amended and supplemental bill of complaint was filed by order entered in June of 1976. Parties defendant to this bill were Powell; Daniel L. Thrasher, Jr., individually and as Executor of his mother's estate; Irene H. Thrasher; Catherine Ann Thrasher, individually; Sallie Thrasher, Trustee for Catherine; Emma Jean Thrasher, II, an infant; and Jack D. Maness, Trustee for Emma Jean, II. The amended bill designated Parcels One, Two and Three, and

sought to have sold so much of the real estate as was necessary to satisfy the judgment.

After considering the evidence presented during two hearings, at which all parties were represented by counsel and the infant by a guardian ad litem, the commissioner found that Tidewater was entitled to have all, or portions, of the subject property sold to satisfy the judgment. He further concluded that all of the real estate subject to the lien of the judgment was more than sufficient to satisfy the lien and that all three parcels had been aliened, within the meaning of former Code § 8-395, *infra*. The commissioner also reported, *inter alia*, that to the extent necessary, the subject real estate should be sold in satisfaction of Tidewater's judgment in the following order: first, the 74.6-acre tract; second, the 15-acre Home Site; and third, the 400-acre Elbow Farm. As we have already noted, the trial court confirmed the commissioner's report and ordered the real estate sold in the order specified.

On appeal, only defendant Maness, Trustee, and the infant defendant by her guardian ad litem (hereinafter collectively referred to as Maness), and Thrasher, individually and as Executor (collectively Thrasher), have appeared. None of the other defendants noted an appeal.

Maness contends, as he did below, that this is a suit under Code § 64.1-181[1] to subject the estate of Emma P. Thrasher to the claims of her general creditors rather than a suit to enforce the lien of a judgment against real estate of a judgment debtor under former § 8-391.[2] Maness seeks to have the personal estate sold first under § 64.1-181 to satisfy the judgment before any sale of the real estate subject to the lien is ordered. The reason Maness takes this position

---

[1] "**§ 64.1-181. Real estate of decedent assets for payment of debts.**—All real estate of any person who may hereafter die, as to which he may die intestate, or which, though he die testate, shall not by his will be charged with or devised subject to the payment of his debts, or which may remain after satisfying the debts with which it may be so charged or subject to which it may be so devised, shall be assets for the payment of the decedent's debts and all lawful demands against his estate, in the order in which the personal estate of a decedent is directed to be applied."

[2] Code § 8-391 (now § 8.01-462) provided:

"**Jurisdiction of equity to enforce lien of judgment; when it may decree a sale.**—Jurisdiction to enforce the lien of a judgment shall be in equity. If it appear to the court that the rents and profits of all real estate subject to the lien will not satisfy the judgment in five years, the court may decree such real estate, or any part thereof, to be sold, and the proceeds applied to the discharge of the judgment."

is because expert testimony indicated the value of Parcel One, the 74.6-acre tract was approximately $60,000 with the easement and $112,000 without it. Maness, consequently, seeks to postpone any sale of Parcel One until July 1, 1988, when the easement will terminate.

■ A judgment creditor having established his debt against the judgment debtor during the debtor's lifetime has the right to look to the deceased debtor's estate, real and personal, as equally liable. This is a right the creditor may properly exercise, unless some equitable reason demands he proceed first against the personal estate, and the creditor is not compelled to look to the realty merely as a secondary fund for payment. *Suckley* v. *Rotchford*, 53 Va. (12 Gratt.) 60, 68 (1855). *See James* v. *Life*, 92 Va. 702, 704-05, 24 S.E. 275, 276 (1896); *Price* v. *Thrash*, 71 Va. (30 Gratt.) 515, 524-27 (1878). Consequently, resolution of the issues Maness raises requires examination of the pleadings and proceedings below. Such an inspection convinces us the suit was intended to be and was treated as a judgment-lien creditor's suit under Code § 8-391, and not a general creditors' suit under § 64.1-181.

■ The original bill of complaint joining Powell and the Executor as defendants, after alleging the facts of the judgment, asserted that Emma P. Thrasher on the date of the judgment was seized and possessed of only the 15-acre Home Site. The pleading further alleged the sale to Powell was without consideration and that the rents and profits from that land would not satisfy the judgment in five years. The prayer of the bill asked "that the said real estate, or so much thereof as may be necessary, be sold to satisfy the said judgment" and contained a request for general relief. Thrasher represents in his brief, not denied by Maness, that during a hearing on the original bill, the commissioner learned of the 400-acre parcel and the 74.6-acre parcel, and the interest of the infant in the latter, and required Tidewater "to file an amended and supplemental complaint including in the controversy Mrs. Thrasher's entire estate."

The amended bill filed against, among others, the decedent's devisees and heirs at law, alleged Emma P. Thrasher was also seized of Parcels Two and Three on the date of the judgment, recited how the titles to the respective tracts devolved, and asserted the rents and profits from the subject parcels would not satisfy the judgment within five years. The amended bill, in addition to a request for general relief, like the original bill prayed "that the said real estate, or so much thereof as may be necessary, be sold to satisfy the said

judgment," commencing with the 15-acre tract, followed by the 74.6-acre tract, and finally the 400-acre tract.

The evidence presented during the hearings before the commissioner focused on the questions put in the decree of reference, which exclusively related to the sale of the real estate and did not require a determination of the extent of the decedent's personal estate. For example, subjects of inquiry included: a finding of who were the owners of the property involved; whether Tidewater was entitled to have any of the property sold to satisfy the judgment and, if so, the order the same should be sold; the amount of the fee simple and annual value of said real estate; and whether the 74.6-acre tract was susceptible of partition in kind, including factors usually associated with a contemplated partition. The commissioner was also directed to report whether any of the personal estate of Emma P. Thrasher must be sold in satisfaction of the judgment lien before any sale could be ordered of real estate subject to the lien.

In his report, the commissioner responded fully to the inquiries in the decree of reference, and specifically found the suit was not a general creditors' suit but was a judgment-lien creditor's suit. This conclusion was confirmed by the trial court and we agree with it.

Except for the fact that the plaintiff's original claim is evidenced by a judgment, the suit has none of the characteristics of a general creditors' suit. On the other hand, it has all the attributes of a judgment-lien creditor's suit to subject the lands of the decedent, owned by her at the time of the judgment, to the enforcement of the judgment lien. *Cf. Peatross* v. *Gray,* 181 Va. 847, 855-56, 27 S.E.2d 203, 208 (1943).

Maness dwells on the fact that the Executor of the estate of the decedent was made a party defendant to this suit. He points out that when the suit was filed the decedent's estate owned no real property because all Emma P. Thrasher's property had been bequeathed and devised to her son. Maness argues that because of the prayers for general relief and because the Executor was a party defendant, "clearly" the suit became a creditors' suit for collection of the debt. Relying on *Peatross,* he says that here the personal estate of the decedent should be exhausted before a sale of the realty. He also relies on *Morrison* v. *Morrison,* 177 Va. 417, 14 S.E.2d 322 (1941), and argues that Code § 8-391 applies only to a suit to subject land of a living debtor to the lien of a judgment and here the suit was maintained against the personal representative of a deceased debtor.

Maness' reliance on those cases is misplaced. *Peatross* is distin-

guishable on its facts because there the court found "beyond question, that the proceeding [was] primarily a general creditors' suit" after analyzing the pleadings and proceedings. 181 Va. at 856, 27 S.E.2d at 208. *Morrison* is equally inapposite because there, in a suit brought under the predecessor to Code § 64.1-181, the court merely stated that an instance in which the ancestor to former § 8-391 may be applied is "to a suit in equity brought to subject the lands of a living debtor to the 'lien of a judgment' thereon," 177 Va. at 424, 14 S.E.2d at 325. The *Morrison* court then recognized the two different remedies with separate rules of law available to a judgment creditor, one a general creditors' suit, and another the judgment-lien creditor's suit brought either while the judgment debtor is living or, as we have already said, after such debtor dies.

█ In addition to his main contention, Maness also argues it would be "unduly harsh" to require the entire 74.6-acre tract sold since the infant's interest in that tract is not subject to the judgment. Without telling us how, as a practical matter, a portion of this tract can be sold in view of the finding below, which was supported by credible evidence, that such parcel "is not susceptible of partition in kind," Maness merely says the tract should be retained until the easement expires in 1988. That contention, though appealing, is legally without merit.

The trial court and commissioner found, and this ruling has not been attacked in written or oral argument on appeal, that the three parcels had been aliened within the meaning of former Code § 8-395.[3] *See generally,* 1 F. Ribble, *Minor on Real Property* §§ 674-677 (2d ed. 1928); Annot., 131 A.L.R. 4. Parcel Three was found aliened first for value by execution of various deeds of trust thereon as early as 1967. Parcel Two was found aliened second by the conveyance

---

[3] Code § 8-395 (now § 8.01-464) provided:

"**§ 8-395. Order of liability between alienees of different parts of estate.**— When the real estate liable to the lien of a judgment is more than sufficient to satisfy the same, and it, or any part of it, has been aliened, as among the alienees for value, that which was aliened last, shall, in equity, be first liable, and so on with other successive alienations, until the whole judgment is satisfied. And as among alienees who are volunteers under such judgment debtor, the same rule as to the order of liability shall prevail; but as among alienees for value and volunteers, the lands aliened to the latter shall be subjected before the lands aliened to the former are resorted to; and, in either case, any part of such real estate retained by the debtor shall be first liable to the satisfaction of the judgment. An alienee for value, however, from a volunteer shall occupy the same position that he would have occupied had he purchased from the debtor at the time he purchased from the voluntary donee."

to Powell in 1973, which was without consideration thus making him a volunteer alienee. Parcel One was found to be the last aliened as the result of the death of Emma P. Thrasher in 1974, placing the devisee of her undivided one-third interest in that parcel also in the position of a volunteer. *See Minor* § 676 at 885. The commissioner also noted that even if Parcel One is not considered as being aliened, it nevertheless must be sold first, under the provisions of the statute, because such parcel would be "real estate retained by the debtor" and thus first liable to the satisfaction of the judgment. In the face of these findings supporting sale in inverse order of alienation, we cannot say that the court below erred by ordering the whole of Parcel One sold first.

■ Maness addresses two other questions on appeal. He contends the trial court erred in not finding the rents and profits of the real estate would be sufficient to satisfy the judgment and erred in its findings as to the fair market value of Parcels One and Three. The evidence below was sufficient to support these findings of fact and thus they will not be disturbed on appeal.

For the foregoing reasons, the decree appealed from will be affirmed.

■ This result would ordinarily not require a remand to the trial court. But Maness, during the week before oral argument, and at the bar, advised us of certain developments which had taken place in this controversy after appellate briefs had been filed. He represented that on October 19, 1978, Tidewater assigned this judgment to Daniel L. Thrasher, Jr., and his wife; that on the same day, the lien of the judgment as to Parcel One was subordinated to a deed of trust securing a loan from the Federal Land Bank of Baltimore; and, that in March of 1979 Parcel Two owned by Powell was released from the lien of this judgment. Maness argued orally that a merger thus has resulted because "the owner of the judgment lien is seeking to enforce it against his own land."

We cannot, of course, adjudicate any questions arising from these events not a matter of record in this appeal and not a subject of the adversary process. So, while we will affirm the decree below, we will nevertheless remand the suit without prejudice to the right of Maness, or any other proper party, to seek adjudication of any issues properly arising from the foregoing developments.

*Affirmed and remanded.*